UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARLOS SAMAYOA,

               Petitioner,

vs.                        Case No.  2:08-cv-114-FtM-29DNF

WALTER MCNEIL; ATTORNEY GENERAL
OF THE STATE OF FLORIDA,

               Respondents.

_____

### OPINION AND ORDER

Petitioner Carlos Samayoa (hereinafter "Samayoa" or "Petitioner") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 on February 6, 2008,[1] challenging his judgment of conviction for one count of capital sexual battery and one count of lewd and lascivious acts (Case No. 14 2003-CF-000361) against the minor victim W.R., entered in the Twelfth Judicial Circuit Court, DeSoto County, Florida.  Petition at 1.  The Respondent filed a Response (Doc. #11, Response) in opposition to the Petition and attached supporting exhibits (Doc. #15, Vol. 5-12; Vol. 11, Exhs. A1-AA6; Vol. 12, Exhs. B1-B3), consisting of the trial transcript and post-

_____

[1]The Petition was docketed and filed in this Court on February 8, 2008.  The Court, however, applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing," which is the February 6 date referenced above.  Alexander v. Sec'y, Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

conviction pleadings.[2]   Petitioner was advised of his responsibilities in filing a Reply, but failed to do so. <u>See</u> Doc. #7 (advising Petitioner of parameters in filing a Reply); <u>see</u> <u>generally</u> docket. This matter is ripe for review.

## I. Procedural History

Petitioner was charged by a Second Amended Information with two counts of sexual battery by a person 18 years of age or older upon a child less than 12 years of age in violation of Florida Statute Section 794.011(2)(a)(C)(F); and, two counts of lewd, lascivious, or indecent act upon a child under 16 years of age in violation of Florida Statute Section 800.04(1)-(2)(A)(F).[3] Exh. A-1; Exh. B1; <u>www.desotoclerk.com</u> (Second Amended Information filed May 12, 2005). The State moved to introduce collateral crime witnesses, Cynthia Albritton and Darlene Guzman, at trial. The trial court granted the motion. Exh. A2-A3, A7. The case

---

[2]Respondent failed to comply with the Court's April 28, 2008 Order in its entirety. Counsel for Respondent did not review any of the procedural history of the case and failed to address whether the Petition is timely filed, or whether an evidentiary hearing was afforded to Petitioner in its Response. The Response is entirely devoid of any citations to the record and instead merely consists of a "copy and paste" of the State's Response on direct appeal before the State appellate court. Additionally, the Response is virtually devoid of any citations to federal law. Nevertheless, the Court has reviewed the record from the State court proceedings and with the Petition and the Respondent's limited Response thereto, will rule on this matter without directing supplemental briefing by the Respondent.

[3]According to the record, because the case involved 2 minor victims, the trial court severed the trials.

proceeded to a jury trial on December 19-23, 2005.  Vol. 5-12.  The jury found Petitioner guilty of counts one and three.  Exh. A6; www.desotoclerk.com.  Judgment was entered December 23, 2005.  Exh. A6.

Petitioner, through counsel, initiated a direct appeal.  Exh. B1.  Petitioner raised the following ground of trial court error:

Did the trial court err in admitting collateral crimes evidence of sexual abuse against other children when the evidence was dissimilar to the charged abuse, was conflicting and disputed [;] and [,] thus became a feature of the trial?

Id.  The State filed an answer brief in opposition.  Exh. B3.  On October 12, 2007, the appellate court entered an order affirming Petitioner's conviction and sentence.  Samayoa v. State, 976 So.2d 1112 (Fla. 2d DCA 2007)[table].[4]  Petitioner initiated this federal habeas corpus petition in February 2008.

---

[4]According to the Petition, on November 13, 2007, Petitioner filed a post-conviction motion pursuant to Fla. R. Crim. P. 3.850 (hereinafter "Rule 3.850 Motion") raising the same issue Petitioner raised on direct appeal.  Petitioner states he "voluntary dismissed" this Rule 3.850 Motion.  Petition at 3.  Petitioner moved to voluntarily dismiss his first Rule 3.850 Motion on January 10, 2008, and the post-conviction court granted his motion on January 25, 2008.  www.desotoclerk.com.  Additionally, Petitioner filed a second Rule 3.850 Motion on May 27, 2008.  On June 9, 2008, the post-conviction court denied Petitioner's second Rule 3.850 Motion.  Petitioner sought rehearing; and, on July 10, 2008, the post-conviction court denied rehearing.  On July 11, 2008, Petitioner filed an appeal pursuant to Fla. R. App. P. 9.141(b)(2).  The appellate court per curiam affirmed the post-conviction court's order on August 14, 2009.  Samayoa v. State, 15 So.3d (Fla. 2d DCA 2009)[table].

## II.  Applicable § 2254 Law

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action.  Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001).  Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts.  Alston v. Fla. Dep't of Corr., 610 F.3d 1318, 1325 (11th Cir. 2010)(citations omitted).  AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002)(citation omitted).  The following legal principles apply to this case.

### A.  Only Federal Claims are Cognizable

A federal court may entertain an application for a writ of habeas corpus from a person in state custody pursuant to a state court judgment only on the grounds that the petitioner is in custody in violation of the United States Constitution or the laws or treaties of the United States.  28 U.S.C. § 2254(a).  A claimed violation of state law is insufficient to warrant review or relief by a federal court under § 2254.  Pulley v. Harris, 465 U.S. 37, 41 (1984)(stating "[a] federal court may not issue the writ on the basis of a perceived error of state law."); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)(stating "[t]oday, we reemphasize that it is

-4-

not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); <u>Waddington v. Sarausad</u>, 129 S. Ct. 823, 832 n.5 (2009)(same); <u>Cabberiza v. Moore</u>, 217 F.3d 1329, 1333 (11th Cir. 2000)(stating § 2254 not enacted to enforce state-created rights); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983)(finding claim involving pure question of state law does not raise issue of constitutional dimension for federal habeas corpus purposes; state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved).

**B.  Deference to State Court Decision**

A federal court must afford a high level of deference to the state court's decision.  <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008).  Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  <u>See</u> <u>Berghuis v. Thompkins</u>, 130 S. Ct. 2250, 2259 (2010).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  <u>Blankenship v. Hall</u>, 542 F.3d 1253, 1271

(11th Cir. 2008); <u>Ferguson</u>, 527 F.3d at 1146; <u>Wright v. Sec'y,
Dep't of Corr.</u>, 278 F.3d 1245, 1253-54 (11th Cir. 2002).  When the
last state court rendering judgment affirms without explanation,
the Court presumes that it rests on the reasons given in the last
reasoned decision.  <u>Powell v. Allen</u>, 602 F.3d 1263, 1268 n.2 (11th
Cir. 2010)(citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-05 (1991)).

    "[C]learly established federal law" consists of the governing
legal principles, rather than the *dicta*, set forth in the decisions
of the United States Supreme Court at the time the state court
issues its decision.  <u>Carey v. Musladin</u>, 549 U.S. 70, 74
(2006)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).  A
state court decision can be deemed "contrary to" the Supreme
Court's clearly established precedents within the meaning of §
2254(d)(1) only if: (1) the state court applies a rule that
contradicts the governing law as set forth in Supreme Court cases,
or (2) the state court confronts a set of facts that is "materially
indistinguishable" from those in a decision of the Supreme Court
and yet arrives at a different result.  <u>Brown v. Payton</u>, 544 U.S.
133, 141 (2005); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15-16 (2003).
It is not mandatory for a state court decision to cite, or even to
be aware of, the relevant Supreme Court precedents, "so long as
neither the reasoning nor the result . . . contradicts them."
<u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

    A state court decision involves an "unreasonable application"
of the Supreme Court's precedent if the state court correctly

identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be "objectively unreasonable," a substantially higher threshold. Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)(citing cases). Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004).

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). A factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has not yet decided whether a petitioner must establish only that a factual finding is unreasonable, or must also rebut the presumption. Wood v. Allen,

130 S. Ct. 841, 848 (2010).   In any event, the statutory
presumption of correctness "applies only to findings of fact made
by the state court, not to mixed determinations of law and fact."
Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001)(citation
omitted).

## II. Analysis

This Court has carefully reviewed the record and, for the
reasons set forth below, concludes no evidentiary proceedings are
required in this Court.  Schriro v. Landrigan, 550 U.S. 465, 127 S.
Ct. 1933, 1939-40 (2007).  Petitioner does not proffer any evidence
that would require an evidentiary hearing, Chandler v. McDonough,
471 F.3d 1360 (11th Cir. 2006), and the Court finds that the
pertinent facts of the case are fully developed in the record
before the Court.  Schriro, 550 U.S. at 474; Turner v. Crosby, 339
F.3d 1247, 1275 (11th Cir. 2003).

### A.  Timeliness, Exhaustion, and Procedural Default

Respondent does not address whether Petitioner timely filed
his Petition, whether Petitioner's post-conviction motions were
properly filed and tolled the federal limitations period, or
whether Petitioner has exhausted his claim by raising the issue in
federal terms before the State courts.  Further, Respondent does
not address whether Petitioner's claim *sub judice* is procedurally
defaulted.   The Court, in its discretion, decides it will not
address these matters, *sua sponte*, and will turn to the merits of

the claim.  <u>See</u> <u>Day v. McDonough</u>, 547 U.S. 198, 205 (2006)(stressing "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants, . . . then by the same token, they surely have no obligation to assist attorneys representing the State).

**B.  Ground One- Whether the trial court erred by admitting collateral crimes evidence**

**(1)**

Petitioner states that the trial court's admission of "<u>Williams</u>[5] Rule evidence" consisting of testimony from other victims of his sexual abuse amounted to a fundamental error because it confused the jury.  Petition at 5, 13.  Petitioner also faults the appellate court for failing to consider a case his appellate counsel filed as "supplemental authority."  <u>Id.</u> at 6 (citing Pet. Exh. A; <u>Foreman v. State</u>, (Fla. 2d DCA 2007)).

In Response, Respondent states that Petitioner has not "even attempted to show that the Florida state courts' disposition of the claim . . . . resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[5]In <u>Williams v. State</u>, 110 So. 2d 654, 663 (Fla. 1959), the Supreme Court of Florida held that "evidence of any facts relevant to a material fact in issue, except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion", and this rule applies to "relevant similar fact evidence . . . even though it points to the commission of another crime."  The holding in <u>Williams</u> was codified in Florida Statute Section 90.404(2)(2001).

determined by the Supreme Court of the United States, inasmuch as he relies solely on state court cases." Response at 3.  Respondent also submits that Petitioner's claim involves an evidentiary ruling under State law and does not constitute grounds for relief in federal court.  Response at 3.  Petitioner did not file a Reply. See docket.

The introduction of the collateral crimes evidence was addressed before trial.  In a written order granting the State's motion to permit introduction of this evidence, the trial court ruled:

> The Defendant in this case is charged with two (2) counts of Capital Sexual Battery, pursuant to § 794.011(2)(a), Fla. Stat. By attempting to introduce evidence of these past unrelated, but allegedly similar assaults by Defendant, the State has invoked the Williams Rule, which states,
>
>> evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion.  This rule we hold applies to relevant similar fact evidence illustrated by that in the case at bar even though it points to the commission of another crime.  The matter of relevancy should be carefully and cautiously considered by the trial judge.  However, when found relevant within the limits of the stated rule, such evidence should be permitted to go to the jury.
>
> Williams v. State, 110 So. 2d 654, 663 (Fla. 1959).
>
> The Court, therefore, must balance Defendant's right to a fair trial and the State's ability to introduce evidence of prior acts similar to those alleged in the pending case as circumstantial proof of motive, intent,

preparation or method of operation.  Insko v. State, 884
So. 2d 312 (Fla. 2d DCA 2004).  The rule, however, may
not be used solely to prove bad character or a propensity
to commit a particular crime.  As will be demonstrated in
this case, Section 90.403 still requires the trial court
Judge to act as a "gatekeeper," weighing the probative
value and the prejudicial effect of the proffered
testimony– keeping in mind that the case law still
requires that such testimony not become the central
feature of the trial.  Id. at 314.

The State desires to present the testimony of two
prior victims, Darlene Albritton ("Albritton") and
Cynthia Guzman ("Guzman").  The details of each incident
of the alleged assault of these two victims are
strikingly similar to the acts Defendant allegedly
committed upon I.R. and W.R., the victims in this case.

Defendant was stepfather to Albritton and Guzman and
had established a close relationship with them.  Like the
victims in this case, Albritton and Guzman had been
entrusted to the Defendant's care in their home.  At the
time that the alleged sexual abuse began, Albritton and
Guzman were approximately 12-13 years old, approximately
the same age that I.R. and W.R. were at the time the
alleged abuse began.

All victims report the same set of circumstances.
The incidents often occurred during a time when the
victims were alone with the defendant.  The allegations
involve fondling or touching and eventually sexual
penetration, which happened over an extended period of
time.  Initially, all victims were scared to report the
incidents to their mother as they felt she would not
believe them or for fear that Defendant would punish
them.  When the mother was informed, she failed to take
any action.  The victims refused to report the incident
to authorities because they did not think anyone would
believe them.  This is notable apparently since there
were several reports of physical abuse, which were
investigated, but never acted upon.  All reports were
unfounded.  Thus, it is the similarity between the
charged offenses herein, and the other crimes or acts
that gives the evidence probative value.  While the
evidence is prejudicial to defendant because it tends to
suggest that he committed the crimes charge[d] in this
case, it's probative value is not outweighed.  This is

especially true as identity is not a material issue in this case.

Based upon the foregoing facts, the Court finds that the testimony of Albritton and Guzman falls within the Williams Rule.

Exh. A5.   Petitioner appealed the trial court's decision on direct appeal, but raised the claim as one of trial court error, not "fundamental error."   The appellate court affirmed the trial court's decision to permit introduction of the collateral evidence.

**(2)**

It is well established that a state court's ruling on a question of state law, such as the evidentiary issue *sub judice*, is cognizable in federal habeas only to determine whether the alleged error was so critical or important to the outcome of the trial to render the trial fundamentally unfair. Carrizales v. Wainwright, 699 F.2d 1053, 1053-54 (11th Cir. 1983).   Such a review is available under the Due Process Clause. Hills v. Henderson, 529 F.2d 397, 401 (5th Cir. 1976).   Nevertheless, as set forth above, it is Petitioner's burden to show that the State courts' decision resulted in a decision contrary to, or an unreasonable application of, clearly established Federal law.   § 2254(d).   While the State appellate court's order does not cite any case law or include it's rationale to affirm the trial court's order, the Court must defer to the state court decision unless review of the record shows that

decision to be unreasonable.  Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).[6]

Upon review of the State court's decision, the Court finds the decision neither contrary to, nor an unreasonable application of federal law.  The Court notes that Petitioner points to no authority set forth by the United States Supreme Court suggesting that the admission of "other-act" evidence is unconstitutional. The Court's independent research also did not reveal any United States Supreme Court precedent that contradicted the State court's decision on this matter.  To the contrary, the admissibility of such evidence is judged under a due process standard on § 2254 review, Estelle v. McGuire, 502 U.S. 62 (1991), and the state court's decision was neither contrary to nor an unreasonable application of the federal law.

The Court also finds that the State court's decision did not involve an unreasonable determination of the facts based on the evidence presented.  In this case, Petitioner was charged with capital sexual battery and lewd and lascivious battery on W.R., a victim under the age of 16, stemming from acts that occurred between January 1999 and December 31, 1999. Exh. A1. The Florida Evidence Code was amended in 2001 to provide that prior acts of child molestation may be considered for their bearing on any

---

[6]Petitioner's contention that the appellate court committed an error because it did not review his counsel's supplemental authority is purely speculative.

relevant matter.   Prior to that 2001 amendment, <u>Heuring v. State</u>, 513 So. 2d 122 (Fla. 1987) was the seminal case regarding admission of other acts of sexual battery in a familial setting.   The standard under <u>Heuring</u> was more strict than the relevancy standard set forth in the 2001 amendment.   Under <u>Heuring</u>, the charged and collateral offenses must be strikingly similar and must also share some unique characteristic or combination of characteristics which sets them apart of other offenses.   <u>Id.</u> at 124.

Here, the Court notes that the trial court found the evidence "strikingly similar."   The Court finds that the trial court's decision to admit the <u>Williams</u> rule evidence, including the testimony from Darlene Guzman and W.R.'s sister, Y.R., was reasonable based on the facts.   The record establishes that the collateral evidence was not only relevant, but was strikingly similar and, to the extent the testimony contained any differences, the differences were insubstantial.   The State first introduced the testimony from W.R., the victim, who was 14 at the time she testified in court.   Exh. Vol. 6 at 108.

> W.R. testified that [Petitioner] sexually abused her
> several times.   W.R. knew [Petitioner] well because he
> would watch her and her siblings when their mother was at
> work.   The first time [Petitioner] molested her was when
> W.R. was thirsty and went inside [Petitioner's] house to
> get a drink. [Petitioner] told her to get a cup off his
> table, and he threw her on his bed. [Petitioner] put his
> hands in her pants and massaged her with his hands.   W.R.
> kicked and tried to scream, but [Petitioner] covered her
> mouth. [Petitioner] had one hand over her mouth and the
> other down W.R.'s pants for ten to fifteen minutes.
> [Petitioner's] knees were on her hands, and he was

sitting on her stomach.  When it was over, W.R. tried to run out, but [Petitioner] held her and told her that if she ever told anyone, he would take her away.  This happened during the day time, and she did not know where her mother or Lillian was.

On another occasion, [Petitioner] pulled her out of the shower and shoved her brother in. [Petitioner] then took W.R. in his room. [Petitioner] put his hands down her pants and put his hands in her vagina, causing her to hurt.  W.R. screamed, and her brother heard and responded, "What?" [Petitioner] covered her mouth, yelled back that it was nothing, and continued. [Petitioner] told her to stay still.  W.R. was seven years old when this happened. [Petitioner] sexually abused her in this manner other times as well.

W.R. further testified that on yet another occasion, at [Petitioner's] house, he pulled her shorts to the side and put his penis inside her vagina, which caused her to hurt. [Petitioner] pulled his penis out through his boxer shorts. [Petitioner] "squished" her buttocks and asked her to pull her hair to the side.  This occurred in the daytime.  All the incidents occurred in [Petitioner's] house.  W.R. was afraid to tell anyone because [Petitioner] threatened to take her away if she did.

Exh. B2; see also Exh. Vol. 6 at 101.  The State also introduced

collateral evidence from Y.R., W.R.'s sister, who testified about

the sexual abuse she suffered by Petitioner.  Exh. Vol. 7 at 239.

Y.R. also testified at trial about the four or five sexual abuse incidents she endured from [Petitioner]. Significantly, similar to W.R., when Y.R. went inside [Petitioner's] house to get a drink of water, he abused her on his bed with her pants off.  All the incidents involved [Petitioner' putting his penis inside her vagina in his bedroom. [Petitioner] would ejaculate outside, and she could see the white stuff coming out of his penis. Y.R. tried to scream, but [Petitioner] would also cover her mouth.  Afterward, Y.R. went home and into the bathroom to wipe herself off because she was bleeding. [Petitioner] told her that if she told anyone, he would call HRS on her mother.  Y.R. never discussed the sexual abuse with her sister except for one time after her Aunt

Jocelyn first learned about it.  Y.R. did not talk about the details of the incident, only that it happened.  Y.R. was about twelve years old at the time.

Exh. B6.  Collateral evidence was introduced from the testimony of Darlene (Guzman) Albritton, who is Petitioner's de facto stepdaughter.  Darlene was age 19 when she testified at trial about the sexual abuse she suffered by Petitioner.  Vol. 9 at 298.

[S]he lived with [Petitioner] a long time when he was her mother's boyfriend. [Petitioner] first started sexually abusing her by fondling her and putting his finger into her vagina when she was about ten or eleven years old. [Petitioner] started having sexual intercourse with her, he would ejaculate outside of her vagina. [Petitioner] sexually abused her over thirty times, about fifteen to twenty of those times occurred at the same house where W.R. or Y.R. were abused by [Petitioner].  Most of the time, no one else was around, and it happened during the day or night. [Petitioner] would pick a fight with her mother or ask her to leave, and he would enter her room and start touching her.  Like the other girls, Darlene would scream, but he would cover her mouth with is hand. [Petitioner] also threatened Darleen to not tell anyone, or he would hurt her. [Petitioner] also told her that no one would believe her.

At Granny English's house, [Petitioner] called Darlene over to sit on his lap.  She sat on his lap for a few minutes, and [Petitioner] tickled her.  Then, [Petitioner] started putting his fingers into her vagina. Her sisters, who had been bringing brush from the front to the back, saw it.  She told her mother about the abuse when [Petitioner] put his finger inside her vagina at Granny English's house, but her mother did not take any action.  Darlene thought because her mother did not believe her, no else would either.  Darlene came forward after the other girls did.

Exh. B6; Exh. Vol. 7 at 298.

The State introduced the testimony from Betty Whittaker and Cynthia Albritton, who are Darlene's sister.  Betty and Cynthia

testified that on one occasion they witnessed Petitioner's hands in Darlene's shorts while she sat on his lap.  Exh. Vol. 10 at 571. Cynthia testified that she told their mother about the incident, but nothing changed.  Id. at 571-72.  Although the trial court's order concerned collateral evidence that Petitioner committed a sexual assault on Cynthia Albritton, the record shows that Cynthia did not testify that she had been sexually abused by Petitioner. Exh. Vol. 10 at 571-577.  Cynthia's testimony was limited to corroborating Darlene's testimony about her sexual abuse by Petitioner.

The State also introduced testimony from numerous other witnesses, including a pediatric nurse, Pat Schrimmer, and Doctor Katherine Keely, a practicing pediatrician for 24 years.  Both witnesses testified about their medical finding that W.R. and Y.R. were victims of sexual abuse based on examinations that occurred in 2002.  Exh. Vol. 9 at 453.  Nurse Schrimmer described the injuries that W.R. sustained as "so obvious, severe and impressive that she did not think using a colposcope was necessary."  Exh. Vol. 9 at 424.  Nurse Schrimmer also testified that her medical examination of Y.R. revealed injuries "so severe and obvious that no instruments were used to examine the child."  Id. at 430. Schrimmer testified that there was no point to take specimens of discharge or sperm because in children that evidence disappears

after 72 hours and the examination was occuring more than 2 years after the sexual abuse.  Id. at 441-42.

Doctor Keely's testimony corroborated the testimony from W.R., Y.R., and Nurse Schrimmer.  Exh. Vol. 9 at 477.  Doctor Keely testified as to the injuries W.R. sustained to her vagina and described photographs of the injuries to the jury.  Exh. Vol. 9 at 477-487.  Doctor Keely testified that W.R.'s injuries would have occurred from multiple occasions when penetrating trauma occurred. Id. at 487-488.  These injuries could not have been self inflicted. Id. at 492.

This Court agrees with the trial court that the testimony from Y.R. and Darlene about the incidents of sexual abuse by Petitioner involved the same set of circumstances as those circumstances presented by W.R.  Petitioner had established a relationship with each of them and was entrusted for the girls' care.  The incidents occurred during the day time while Petitioner was alone with the girls.  The girls were all approximately the same age when the abuse occurred.  The incidents started with fondling, or touching, and lead to sexual penetration, which occurred over an extended period of time.  The Petitioner covered the girls' mouths when they screamed.  The victims were all scared to report the incidents because they were either afraid their mother would not believe them, or for fear that Petitioner would punish them.

This evidence that Petitioner sexually assaulted Y.R. and Darlene lent credibility to W.R.'s allegations and was probative of the issue of Petitioner's intent, as well as his plan, scheme or design in that it showed that Petitioner sexually molested inexperienced, young girls, vulnerable to unbelievability, in a familial-like setting, when the girls were in the Petitioner's unsupervised custody and Petitioner had the opportunity to molest them.  Further, the collateral crimes evidence was not a focal point of the jury trial.  During the State's closing argument, the prosecutor emphasized that this case was about W.R.  The trial judge also ensured that the collateral crimes evidence did not become a feature of the trial and reminded the jury that the similar-fact evidence was admitted to show similar crimes, wrongs or acts, for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or accident, or to corroborate the testimony of W.R.  The judge specifically reminded the jurors to only consider the similar-fact evidence as it related to those issues and that Petitioner was not on trial for any crime not included in the information.  Exh. Vol. 12 at 841.

Based on a review of the record, the Court finds that the appellate court's rejection of Petitioner's direct appeal was not contrary to, and did not involve an unreasonable application of clearly established federal law, as established by the United

States Supreme Court.  Moreover, the state court's decision was not based on an unreasonable determination of the facts.  Therefore, Petitioner is not entitled to federal habeas corpus relief on this claim.

**C.  The victim "denied the allegations"**

Petitioner, in closing, generally refers the Court to his attached exhibit B, an abuse report dated October 2, 1995, in which he vaguely states "the victims 'denied the allegations.'"  Petition at 7.

Initially, the Court notes that Petitioner does not state that he has raised this claim before the State court.  At first blush the Court thought that Petitioner was claiming that W.R. recanted her testimony since the trial.  A review of Petitioner's exhibit reveals that he is not claiming that W.R., the victim, recanted her testimony.  The Court finds Petitioner's exhibit B has no relevancy whatsoever to Petitioner's conviction for the crimes the jury found he committed on victim W.R.  The 1995 abuse report describes incidents of physical abuse directed to a different child named Elsie Whitaker, not W.R.  See Pet's Exh. B.  A review of the trial transcript shows that Elsie Whitaker was not called by the State as a witness.  Based on the foregoing, the Court finds that the State court's decision was not contrary to, and did not involve an unreasonable application of clearly established federal law, as established by the United States Supreme Court.  Moreover, the

-20-

state court's decision was not based on an unreasonable determination of the facts.   Therefore, Petitioner is denied relief on this claim.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**.

2.   The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability (COA).  <u>Id.</u>  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." <u>Id.</u> at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003)(quoting

-21-

<u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this   11th   day of February, 2011.

_____

JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record

-22-